Mark Bradford (MB 6002)
MARK BRADFORD, PC
299 12th Street
Brooklyn, New York 11215-4903
Telephone: (347) 413-3287
mb@markbradfordpc.com

Cara R. Burns (CB 1071) (PHV to be requested)
MIMS, KAPLAN, BURNS & GARRETSON
28202 Cabot Road, Ste 300
Laguna Niguel, California 92677
Telephone: (310) 314-1721
Facsimile: (949) 340-9737
cburns@hmkblawyers.com

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

―――――――――――――――――――――――――――― x

| | |
|---|---|
| **CEREMONY OF ROSES ACQUISITION LLC,** | CIVIL ACTION NO. 1:25-cv-7151 AT |
| **Plaintiff,** | F.R.C.P. RULE 65 |
| v. | CERTIFICATE OF COUNSEL OF CARA R. BURNS |
| **JOHN DOES 1-100, JANE DOES 1-100 AND XYZ COMPANY,** | IN SUPPORT OF EX PARTE APPLICATION FOR: A TEMPORARY RESTRAINING |
| **Defendants.** | ORDER; SEIZURE ORDER; AND ORDER TO SHOW CAUSE |
| | WHY A PRELIMINARY INJUNCTION AND SEIZURE ORDER SHOULD NOT ISSUE AND REGARDING LOCAL RULE 7.1(C) AND JUDGE'S INDIVIDUAL PRACTICE RULES III. D. & IV. B. COMPLIANCE |

―――――――――――――――――――――――――――― x

I, CARA R. BURNS, hereby certify and affirm as follows:

1.  I have personal knowledge of the facts set forth herein and if called as a witness, I would be able to testify competently to such facts. I make this certificate in support of Plaintiff, Ceremony of Roses Acquisition LLC ("Plaintiff") ex parte application for: a temporary restraining

1

order; seizure order; and an order to show cause regarding why a preliminary injunction and seizure order should not issue, to enjoin the sale of infringing merchandise bearing the trademarks, service marks, likenesses, logos and/or other indicia of the performer **"BENSON BOONE"** (collectively, the "Artist's Trademarks") and to seize the same, during her tour, including at Madison Square Garden on Saturday, September 6, 2025.  See Declaration of Alan Sitchon ("Sitchon Decl") and Exhibit A thereto.  The tour has just begun and so have the Defendant Bootleggers' infringing activities.  See Sitchon Declaration, including Exhibits C and D there.  The order sought is similar to ones previously granted by this District (including by this Court) and other District Courts for other performers' tours.  See: Merch Traffic. v. Does, Case No. 22-cv-6839 AT (S.D. NY 2022) (Judge Torres) (for Harry Styles' tour); and Merch Traffic, LLC. v. Does, Case No. 21-cv-8283 AT (S.D. NY 2021) (Judge Torres) (for Harry Styles' tour); Bravado v. Does, Case No. 1:24-cv-06517 PAE (S.D. NY 2024) (Judge Engelmayer) (for Nicki Minaj's tour); and Merch Traffic. v. Does, Case No. 23-cv-6794 LLS (S.D. NY 2023) (Judge Stanton) (for Jonas Brothers' tour) among others.  See ¶ 6 *infra*.

2.      Pursuant to Local Rule 7.1(c) and Judge's Individual Practice Rule III. D., I certify that the accompanying memorandum has a word count of 6459 words, exclusive of captions, table of contents and table of authorities, and signature block, and therefore complies with the word-count limitations.

3.      Rule 65(b)(2) of the Federal Rules of Civil Procedure requires that for the Court to grant such an order without notice, "the applicant's attorney [must certify] to the court . . . the reasons supporting [her] claim that notice should not be required." Matter of Vuitton et Fils S.A., 606 F.2d 1, 3 (2d Cir. 1979).  See also Local Rule 6.1 (d) and Judge's Individual Practice Rule IV. B.

4.      I am a member of the firm of Mims, Kaplan, Burns & Garretson, attorneys for Plaintiff in the above captioned action and will be requesting admission pro hac vice in this matter. I am admitted to practice in the state of California and before the United States District Courts for the Central, Southern, Eastern and Northern Districts of California, the United States District Court for the Southern District of Texas, the United States District Court for the District of Colorado, the United States District Court for the District of Arizona, the United States District Court for the Eastern District of Michigan, the United States District Court for the District of Hawaii, and the United States of Court of Appeals for the Ninth and Fifth Circuits. I have represented Plaintiff on a nationwide basis, against the unlawful activities by Bootleggers that violate my client's contractual and legal rights. I have concentrated a substantial portion of my practice in the area of anti-counterfeiting matters for clients such as the Plaintiff and other tour merchandisers such as Bravado International Group Merchandising Services, Inc. (hereinafter "Bravado"), and Merch Traffic, LLC and its predecessors (Live Nation Merchandising, Inc. [hereinafter "Live Nation"] and F.E.A., Inc), as well as for Motorola, Nokia, Warner Bros. Mattel, Novell, the United States Olympic Committee, and the Software Publishers' Association. I have taught intellectual property and entertainment law at USC Annenberg School of Communications (graduate school) and lectured on these subjects at universities and for continuing education. Articles regarding my representation of intellectual property rights holders have appeared in the Wall Street Journal, Boston Globe and The Rocky Mountain News. I have filed numerous ex parte temporary restraining and seizure orders, some of which are set forth in paragraph 6 herein.

5.      As set forth more fully in the Declaration and the complaint, both filed concurrently herewith, Plaintiff has the exclusive right to sell at tour venues "Authorized Tour Merchandise" namely merchandise bearing the Artist's Trademarks –the trademarks, service marks, likenesses,

logos, and other indicia of the Artist. This tour and tours by other performers of the Artist's stature, have recurring problems with individuals who sell infringing Tour Merchandise near, at and sometime inside a concert venue. These individuals are commonly referred to as "Bootleggers," their activities are known as "Bootlegging" and their merchandise is referred to as "Bootleg Merchandise" or "Infringing Merchandise." This application/motion is filed to enjoin these activities and seize the Infringing Merchandise.

6. Plaintiff and other merchandisers have obtained temporary restraining orders and seizure orders and thereon a nationwide seizure orders from this and other District Courts to combat the piratical activities of Bootleggers for other performers. I have personally obtained these orders, except where noted.

**From this District for Other Performers:** Merch Traffic. v. Does, Case No. 22-cv-6839 AT (S.D. NY 2022) (Judge Torres) (for Harry Styles' tour); Merch Traffic, LLC. v. Does, Case No. 21-cv-8283 AT (S.D. NY 2021) (Judge Torres) (for Harry Styles' tour); Bravado v. Does, Case No. 1:24-cv-06517 PAE (S.D. NY 2024) (Judge Engelmayer) (for Nicki Minaj's tour); Merch Traffic. v. Does, Case No. 23-cv-6794 LLS (S.D. NY 2023) (Judge Stanton) (for Jonas Brothers' tour); Bravado v. Does, Case No. 1:25-cv-04006 RA (S.D. NY 2025) (Judge Abrams) (for Pierce the Veil's tour); Merch Traffic. v. Does, Case No. 1:23-cv-3947 DLC (S.D. NY 2023) (Judge Cote) (for BLINK-182's tour); Merch Traffic v. Does, Case No. 23-cv-6021 LGS (S.D.NY 2023) (Judge Schofield) (for Drake's 2023 tour); Merch Traffic. v. Does, Case No. 23-cv-2459 RA (S.D. NY 2023) (Judge Abrams) (for Bruce Springsteen & the E Street Band's tour); LNM v. Does, Case No. 18-cv-7551 LAP (S.D. NY 2018) (Judge Preska) (for Drake's tour); LNM v. Does, Case No 16-cv-0336 (S.D.NY 2016) (Judge Kaplan) (for Bruce Springsteen & the E Street Band's tour); F.E.A., Inc. v. Does, Case No 12-CV-3999 TPG (S.D. NY 2012) (Judge Griesa) (for One

4

Direction's tour); F.E.A., Inc. v. Does, Case No 12-CV-1313 PGG (S.D. NY 2012) (Judge Gardephe) (for Van Halen's tour); and Bravado v. Does, Case No. 11-cv- 6262 JFK (S.D. NY 2011) (Judge Keenan) (Metallica Festival - cite order only sought); and obtained by other counsel: Phish, Inc. v. Does, Case No. 7:11-cv- 3379 KMK (S.D. NY 2011) (Judge Karas) (for Phish's tour); Bravado v. Does, Case No. 1:08-cv- 05543 JGK (S.D. NY 2009) (Judge Koeltl) (for Beyonce's tour); and Megadeth Services, Inc. v. Does, Case No. 1:04-cv- 02288 DAB (S.D. NY 2004) (Judge Batts) (for Megadeth's tour). A true and correct copy of some of the Temporary Restraining Orders and Seizure Orders, and thereafter Nationwide Preliminary Injunction and Seizure Orders are attached hereto as Exhibit A.

**From Other District Courts in New York:** Bravado v. Does, Case No. 1:24-cv-1078 FJS (N.D. NY 2024) (Judge Scullin) (for Post Malone's tour); Merch Traffic v. Does, Case No. 1:24-cv-6122 (E.D. NY 2024) (Judge Merchant) (for Usher's tour); Manhead, LLC v. Does, Case No. 18-CV-3999 (E.D. NY 2018) (Judge Bianco) (for Panic! At the Disco's tour); Live Nation v. Does, Case No. 1:18-cv-580 LEK (N.D. NY 2018) (Judge Kahn) (for Def Leppard's tour); Live Nation v. Does, Case No. 18-cv-3468 (E.D. NY 2018) (Judge Feuerstein) (for Lynyrd Skynyrd's tour); Live Nation v. Does, Case No. 2:17-cv-1987 (E.D. NY 2017) (Judge Feuerstein) (for Def Leppard's tour); Signatures Network, Inc. v. Does, Case No. CV-08-1181 (E.D.NY 2008) (Judge Platt) (for Mary J. Blige's tour); and Signatures Network, Inc. v. Does, Case No. CV 03-3725 (E.D. NY 2003) (Judge Spatt) (for Kiss' tour). A true and correct copy of some of the Nationwide Preliminary Injunction and Seizure Orders are attached hereto as Exhibit B.

**From Other District Courts for Other Performers:** (Sampling of more current and other orders): Merch Traffic v. Does, Case No. 2:25-cv-13960 KSH (D. NJ 2025) (Judge Hayden) for the Jonas Brothers' tour); Bravado v. Does, Case No. 4:25-cv-2738 (S.D. TX 2025) (Judge Lake)

(for Morgan Wallen's tour); Ceremony of Roses Acquisition LLC v. Does, Case No. 25-cv-00350 GPG (D. CO 2025) (Judge Gallagher) (for Tyler, the Creator's tour); Bravado et. al. v. Does, Case No. 25-cv-1766 (S.D. TX 2025) (Judge Eskridge) (for SZA's and Kendrick Lamar's tour); Merch Traffic v. Does, Case No. 1:24-cv-6722 (N.D. IL 2024) (Judge Alonso) (for Metallica's tour); Bravado v. Does, Case No. 24-cv-306 (M.D. TN 2024) (Judge Richardson) (for Nicki Minaj's tour); Bravado v. Does, Case No. 4:24-cv-1457 (S.D. TX 2024) (Judge Lake) (for the Rolling Stones' tour); Bravado v. Does, Case No. 2:24-cv-09555 (D. NJ 2024) (Judge Cecchi) (for Billie Eilish's tour); Merch Traffic, LLC v. Does, Case No. 1:24-cv-01716 RMR (D. CO 2024) (Judge Rodriguez) (for Blink-182's tour); Bravado v. Does, Case No. H-24-cv-585 (S.D. TX. 2024) (Judge Rosenthal) (for the Olivia Rodrigo's tour); Merch Traffic, v. Does, Case No. 23-cv-638 (M.D. Tenn. 2023) (Judge Campbell Jr.) (for Peso Pluma's tour); Bravado v. Does, Case No. 23-cv-11344 (D. MA 2023) (Judge Zobel) (for Morgan Wallen's tour); Bravado v. Does, Case No. 23-cv-12331 (D. MA 2023) (Judge Zobel) (for Aerosmith's tour); Merch Traffic v. Does, Case No. 23-cv-3635 (S.D. Tex. 2023) (Judge Rosenthal) (for Depeche Mode's tour); Manhead, v. Does, Case No. 1:23-cv-2191 GPG (D. Colo. 2023) (Judge Gallagher) (for Jelly Roll's tour); Merch Traffic. v. Does, Case No. 1:23-cv-3947 DLC (S.D.N. 2023) (Judge Cotes) (for Blink-182's tour); Merch Traffic v. Does, Case No. 1:23-cv-02496 RMR (D. Colo. 2023) (Judge Rodriguez) (for Tool's tour); Bravado v. Does, Case No. 22-cv-04859 CCC (D.N.J. 2022) (Judge Cecchi) (for Lady Gaga's tour); Three Ten Merchandising v. Does, Case No. 23-cv-03076 (S.D. Tex. 2023) (Judge Bennett) (for Karol G's tour); Bravado v. Does, Case No. 22-cv-01632 ES (D.N.J. 2022) (Judge Salas) (for Justin Bieber's tour); Merch Traffic v. Does, Case No. 4:22-cv-1361 (S.D. Tex. 2022) (Judge Ellison) (for Coldplay's tour); Bravado v. Does, Case No. 22-CV-00124 (S.D. Tex. 2022) (Judge Bennett) (for Elton John's tour); Merch Traffic v. Does, Case No. 22-cv-1767 RMR

6

(D. CO 2022) (Judge Rodriguez) (for Red Hot Chili Pepper's tour); Bravado v. Does, Case No. 21-cv-762 (M.D. TN 2021) (Judge Trauger) (for the Rolling Stones' tour); Live Nation v. Does, Case No. 2:20-CV-1357 ES (D. NJ 2020) (Judge Salas) (for Post Malone's tour); Live Nation v. Does, Case No. 19-cv-3762 SJC (N. D. IL 2019) (Judge Coleman) (for Dead & Company's tour); Live Nation v. Does, Case No. 19-cv-1580 RM (D. CO 2019) (Judge Moore) (for New Kids On The Block's tour); Bravado v. Does, Case No. 19-cv-3960RC (N.D. IL 2019) (Judge Castillo) (for the Rolling Stones' tour); Live Nation v. Does, Case No. 18-CV-1868 (S.D. TX 2018) (Judge Gilmore) (for the Eagles' tour); TSURT, LLC v. Does, Case No. 2:18-cv-1119 JLR (W.D.WA 2018) (Judge Robart) (for Pearl Jam's tour); Manhead, LLC v. Does, Case No. 18-CV-2103 (S.D. TX 2018) (Judge Hittner) (for Weezer's tour); Live Nation v. Does, Case No. 4:18-cv-660 RLW (E.D. MO 2018) (Judge White) (for U2's tour); TSURT, LLC v. Does, Case No. 18 CV 1119 (W.D. WA 2018) (Judge Robart) (for Pearl Jam's tour); Live Nation v. Does, Case No. 17-CV-1502 (S.D. TX 2017) (Judge Harmon) (for U2's tour); Live Nation v. Does, Case No. 16-cv-4085 JLL (D. NJ 2016) (Judge Linares) (for Coldplay's tour); TSURT, LLC v. Does, Case No. 16 CV 60647 (S.D. FL 2016) (Judge Scola & Ungaro) (for Pearl Jam's tour); Bravado v. Does, Case No. 16-cv-00481 TLN (N.D. CA 2016) (Judge Nunley) (for Justin Bieber's tour); Live Nation v. Does, Case No. 16-cv-0563 JRB (N.D. IL 2016) (Judge Blakey) (for Black Sabbath's tour);  Araca Merchandise v. Does, Case No. 16-cv-1194 GHM (S.D. TX 2016) (Judge Miller) (for Beyoncé's tour); CA2016 Marketing. v. Does, Case No. 16-cv-05890 JJT (N.D. IL 2016) (Judge Tharp) (for COPA soccer games nationwide); (F.E.A. Inc. v. Does, Case No. 15-cv- 1438 CAB (S.D. CA 2015) (Judge Bencivengo) (for One Direction's tour); F.E.A,, Inc. v. Does, Case No.  15-cv-4374 CK (D. NJ 2015) (Judge Kugler) (for Foo Fighters' tour); Bravado v. Various John Does, Case No. 15 CV 1621 CPK (N.D. IL 2015) (Judge Kocoras) (for Ariana Grande's tour); Bravado v. Does, Case No.

15-cv-1097 BAS (S.D. CA 2015) (Judge Bashant) (for the Rolling Stones' tour); <u>Bravado v. Does</u>, Case No. CV 14-5993 DMG (C.D. CA 2014) (Judge Gee) (for Eminem's tour); <u>Epic Rights, Inc. v. Does</u>, Case No. 14-cv-1688 WYD (D. CO 2014) (Judge Daniel) (for Kiss' tour); <u>F.E.A., Inc. v. Does</u>, Case No. 14-CV-1389 (S.D. TX 2014) (Judge Ellison) (for Journey's tour); <u>Live Nation v. Does</u>, Case No. 14-cv-1687 RM (D. CO 2014) (Judge Moore) (for Def Leppard's tour); <u>F.E.A., Inc. v. Does,</u> Case No. CV 14-156 ABC (C.D. CA 2014) (Judge Collins) (for the Eagles' tour); <u>F.E.A., Inc. v. Does,</u> Case No. CV 14-1115 PA (C.D. CA 2014) (Judge Anderson) (for Miley Cyrus' tour); <u>Bravado v. Various John Does</u>, Case No. 14 CV 4983 (N.D. IL 2014) (Judge Wood) (for Paul McCartney's tour); <u>Bravado v. Various John Does</u>, Case No. 13 CV 2227 (N.D. IL 2013) (Judge Gettleman) (for Green Day's tour); <u>TSURT, LLC v. Various John Does</u>, Case No. 13 CV 4990 (N.D. IL 2013) (Judge Durkin) (for Pearl Jam's tour); <u>Live Nation v. Does, et al.</u>, Case No. 12-cv-1136 RBJ (D. CO 2012) (Judge Jackson) (for Roger Waters' tour); <u>Live Nation v. Various John Does</u>, Case No. 12 CV 4842 (N.D. IL 2012) (Judge Kendall/Feinerman) (for Aerosmith's tour); <u>Live Nation v. Does, et al.</u>, Case No. 11-cv-1297 CMA (D. CO 2011) (Judge Arguello) (for U2's tour); <u>F.E.A., Inc. v. Does,</u> Case No. 2:11-CIV- 01329 JAM (E.D. CA 2011) (Judge Mendez) (for the Glee tour); <u>Bravado v. Does</u>, Case No. 11-cv-12704 BAF (E.D. MI 2011) (Judge Friedman) (for Katy Perry's tour); <u>F.E.A., Inc. v. Does,</u> Case No. 11-cv-10136 JLO (E.D. MI 2011) (Judge O'Meara) (for Kid Rock's tour); <u>Arnie Barn, Inc. v. Does</u>, Case No. 11 cv-540-T-RAL (M.D. FL 2011) (Judge Lazarra) (for Kenny Chesney's tour); and <u>Bravado v. Does</u>, Case No. 09-K-1185 (D. CO 2009) (Judge Kane) (for No Doubt's tour), among many others. True and correct copies of some of the temporary restraining orders and seizure orders and thereafter nationwide preliminary injunctions and seizure orders issued are attached hereto as Exhibit C.

7. Although many people were served and thousands of items of Bootleg Merchandise were seized, defendant bootleggers do not appear. Notably, all of the above orders were sought at the beginning of tours by well-known performers (of a caliber of the Artist in this matter). Nearly all were filed against Does only, and defendant Does appeared on the tour and sold their Infringing Merchandise, as demonstrated by the prior orders granted in this District and other Districts.

8. Based upon my knowledge of prior similar actions, I believe that it is far more likely than not that the Defendants will use every effort to transfer, hide or destroy the Bootleg Merchandise if such merchandise is not subject immediately to an ex parte seizure order. From my familiarity with such trademark and unfair competition actions, my observation is that hiding or destroying evidence and business records is usually the first action taken by a Bootlegger after he/she learns that litigation has been commenced by a trademark or similar property owner.

9. As set forth more detail in the Declaration, the Artist is prominent and successful. The Artist's audience spans a large portion of the total concert going public, his career is firmly established and he enjoys a large audience following. The Artist's Trademarks are well known and have acquired secondary meaning.

10. The Bootleggers' pattern is for the same Bootleggers or their infringing merchandise to reappear from one venue to the next. The infringing merchandise bears the trademarks of the performers, including their names and the logos of the tour. In a typical situation, prior to a concert, the Bootleggers appear, offering for sale their infringing, inferior merchandise, particularly T-shirts, bearing the trademarks (including names and likenesses) of the performer appearing at the concert. This illegal merchandise seriously impairs sales of authentic merchandise within the concert venues, particularly because most of the Infringing Merchandise is offered for

9

sale prior to the concert. Thus, each infringing sale represents a lost sale and good will to the Plaintiff and the Artist.

11. The persistence and severity of the bootlegging activities experienced by such performers attests to the economic importance of tour merchandising rights in connection with performers enjoying the prominence of this Artist. Absent the relief requested, the loss of merchandising income at a single venue is substantial. Equally relevant to this application for ex-parte relief, and as more fully demonstrated in the accompanying brief, the injury to the goodwill of Plaintiff/s and the Artist, through distribution of inferior merchandise (which would inevitably be associated with them), is clearly irreparable.

12. The cases cited involved concert tours of prominent musical performers in which a plaintiff's applications for restraining and seizure orders were sought to prevent bootlegging. In each instance in which service of process was made upon the defendant bootleggers, and preliminary injunctions were issued to prohibit continued bootlegging by all defendants including those served with process and all persons acting in concert with them.

13. Like almost all of the actions listed in the Exhibits, this action is commenced against John and Jane Doe defendants because those Defendant Bootleggers cannot be positively identified until the night of the concert (when they are actually served). Generally, individual Defendant Bootleggers are well aware of the illegal nature of his or her activities. They conceal their presence and their intentions until immediately prior to the show. Even when served, they frequently either refuse to identify themselves or provide fictitious names and addresses.

14. These Doe defendants <u>do</u> exist and they are specific people – they are the ones that appear at the concerts, sell their spurious goods and then disappear. I have personally witnessed this at numerous concerts, including those just a few weeks ago. Even when I identify myself as

an attorney and asked for them to stop and for their contact information, Defendant Bootleggers refused. Most often they walked away, one said "where's your order." In context, I believe they mean a seizure order like the one Plaintiff seeks from the court by this application, because the bootleggers know about these orders and that what they were doing was unlawful. In other actions, a nominal number of defendants bootleggers have contacted me and although they refuse to give me their information, they ask if the performer will show up at the hearing (which they do not) or if they can send to me designs for the performer to review. Defendant Bootleggers do not appear in an action because only infringing merchandise is seized and they have no legitimate rights. Further, because Defendants have no legitimate rights, pay no taxes, no licensing fees and the print their infringing merchandise on "seconds" and "irregular" shirts (and other clothing) that are sold at a nominal cost, the bond set in these matters ranges on averages about $5,000 in this District. (See Exhibits, usually page 4 or 5 of each order).

15. Clearly, there is no way of providing formal notice of this action to the defendants. Because Plaintiff holds the <u>exclusive</u> rights to use the Artist's trademarks, service marks, likenesses, logos and other indicia in connection with Tour Merchandise, there is no possibility that issuance of the order sought herein could interfere with or impose a detriment to <u>any</u> legitimate interest of any person.

16. As demonstrated above, the limited relief afforded to performers and their licensees by the issuance of a temporary restraining order and seizure order enforceable at a single concert site would not prevent these itinerant peddlers from following the performers' tours and continuing to infringe their property rights, nor would denying these orders outright, as a few courts have done, simply because they do not believe the defendants exist or the relief is warranted. The requested relief is warranted; these types of actions are the reason the Seizure Order provisions of

the Trademark Act were created. Moreover, to require multiple cases seeking the identical relief against the same defendants would be required. Invariably, the cost inherent in such redundant lawsuits is exorbitant, which plays directly into the hands of the bootleggers, since they know that the expense of bringing separate actions for each concert engagement would be prohibitive.

17. It is believed that all seizures will be affected upon Bootleggers selling substantially identical shirts throughout the country and will be through a concerted operation. However, in the unlikely event that any individuals spontaneously decide to print their own "homemade" shirts, such individuals would be violating the Plaintiff's rights and would be subject to suit in any event. Seizure of such shirts, if any existed, would be virtually identical to seizure under a local order issued in that district. Such local order would not afford them any greater notice or due process. Moreover, requiring the Plaintiff to go from court to court throughout country would be to impose a great burden upon both the Plaintiff and the judicial resources of the federal courts. However, to avoid even a theoretical question, I represent that the Plaintiff will waive any objections to venue and transfer the action.

18. If the proposed order is granted, at the order to show cause hearing, Plaintiff will provide the Court with a declaration regarding service of the order, identifying bootlegging defendants by description and/or photograph and by name if provided, and examples of seized Infringing Merchandise. Plaintiff will present a preliminary injunction and further seizure order.

19. All Infringing Merchandise seized pursuant to the proposed order Plaintiff requests the Court to issue will be held first by Plaintiff's tour managers as the substitute custodian until after the completion of the Tour, at which time the Court can direct the destruction or other disposition of such merchandise.

20. Plaintiff is prepared to proceed with a hearing immediately after the execution of the ex parte order being sought, or at such later time as is convenient to the Defendants and to the Court. Accordingly, the ex parte entry of this order, when balanced against the great hardships to the Plaintiff if the evidence is lost or destroyed, is justified. In addition, as to the request for the national order, Plaintiff will waive any objection to venue should any such persons (or anyone else) wish to question the enforceability of the preliminary injunction.

21. The two main decisions that address the issues in this matter are SKS Merch, LLC v. Barry, 233 F. Supp. 2d 841 (D. KY 2002) and Plant v. Does, 19 F. Supp. 2d 1316 (S.D. FL 1998). In part because of the reasons in SKS Merch, LLC v. Barry, and in part because of my personal knowledge based on participating in filing for numerous similar seizure orders, including obtaining other similar seizure orders from this District for other performers, I believe the issues raised by Plant and those that follow that decision have been addressed in our application or by the Court in SKS Merch. As demonstrated in numerous other matters for similarly successful performers, Defendant Bootleggers will appear along the Artist's tour, as they already have. See Holt Declaration. Bootleggers refuse to identify themselves, in part because they know their activities are illegal. I also note that the court in Plant was unhappy that counsel filed his matter a day before the concert which "creat[ed] an artificial air of emergency" and it should have filed it as a regular motion. Counsel in that matter, who may not have been able to underscore for the Court that the *Lanham Act contemplates that these matters are to be brought on by an ex parte application (i.e. not a formal motion) basis*. I believe based on my extensive history in these types of matters that we are following what is required by the Trademark Act by bringing this as an ex parte application (and not as a noticed motion) a few days prior to the concert. Moreover, if we were to wait for a noticed motion to be heard, or even wait for a few concerts into the tour,

including in order to obtain "information" about the defendants (which again, as the shown in the accompanying Declaration, they will not provide names or any other proper information), Plaintiff would have to file at the location where the Artist will be performing weeks from now. Such a prolonged wait would further irreparably harm Plaintiff and cause a loss of a great deal of good will and revenue, while the Defendant Bootleggers would continue to infringe the Artist's /Plaintiff's rights. In Plant and others, the courts believed that filing before a concert or at the beginning of a tour was premature or that Defendants would not appear, but again here Defendant Bootleggers have appeared. In addition, without an order issued prior to the concerts, there would be *absolutely no viable remedy whatsoever*, including because Defendant Bootleggers fail to adhere to a temporary restraining order or appear in court, even when their goods are seized. Indeed, the Defendant Bootleggers' actions in their stealth bootlegging activities is one of the main reasons Section 1116(d) (including its ex parte application procedure) was enacted.

22.     The seizure order sought is the only way to afford this specific Plaintiff complete relief against the actions of Defendant Bootleggers during the Artist's tour. Plaintiff *does not* seek the relief the Court held was sought in *Trump v Casa, Inc.,* 24A884, (U.S. June 27, 2025), a "universal" injunction, namely one that provides relief to any other plaintiff, or one that provides relief against defendant infringers of all other trademarks that Plaintiff licenses, or against defendant infringers who violate Plaintiff's trademark rights in any other manner, such as those who operate brick and mortar stores or selling their infringing merchandise on the internet. The proposed order is narrowly tailored to combat the itinerant Defendant Bootleggers' infringing actions during the tour of this one particular Artist, at and near the venues where this Artist will be performing, and for a limited time around the Artist's performances. Further, the Federal Trademark Act that Plaintiff seeks to enforce its rights is well settled law and it contains a provision

for nationwide enforcement. See Section 1116 (a) (calling for service "anywhere in the United States where [the Defendants] maybe found"). It is not a policy or a directive or an executive order, and it is not directed against or sought by a branch of the government.

23.     Again, Plaintiff seeks to enforce Federal Trademark statutory law only which provisions and their application to these circumstances are not in dispute. Defendant Bootleggers' have no viable defense against their use of the Artist's Trademarks in their Infringing Merchandise. Plaintiff applies to seize the Infringing Merchandise in order to preserve the most important piece of evidence and stop further harm to the consumer and the Plaintiff. Moreover, the Infringing Merchandise sold during a tour is the same or virtually the same throughout each tour that I have filed similar actions. Therefore, the *only logical* conclusion is that the Defendant Bootleggers on the tour are in active concert and participation with each other, and that complete relief can only be provided by the proposed seizure order. Without the seizure order Plaintiff respectfully requests, the only people who will gain, and gain momentum, are the Defendant Bootleggers, to the detriment of consumers and the Plaintiff.

24.     It is clear that without the relief sought herein, the Plaintiff, the legitimate merchandisers for the Artist, is helpless to prevent this thriving illegal industry from preying upon unwitting fans who are interested in obtaining concert souvenirs. The Defendant Bootleggers will sell Infringing Merchandise unless the requested orders are issued. It is highly doubtful that proper information would be obtained about the Defendant Bootleggers. Again, I stress that these are real people who appear, and have already appeared, at the Artist's concerts, just as they have done during tours by similarly prominent performers. In addition, the pleadings filed herein are indeed similar to pleadings filed in other matters because the actions of the Defendant Bootleggers *are the same* – they appear and sell unauthorized merchandise at concerts, they fail to provide

identification, they fail to voluntarily stop, and they continue on to the next concert. There is no need to "reinvent the wheel."

25.  Plaintiff has followed the procedures of the Anti-Counterfeiting Act and has notified the United States Attorney for this District by letter of their intention to bring this action, and of the nature of this action. The United States Attorney has not responded to this letter.

I declare under penalty of perjury under the laws of the United States and the State of New York that the foregoing is true and correct. Dated: August 28, 2025.

*[signature: Cara R. Burns]*

CARA R. BURNS